1   Matthew A. Paré, Esq., State Bar No.: 258434
    **LAW OFFICE OF MATTHEW PARE, APC**
    303 H Street, Suite 435
2   Chula Vista, CA 91910
    Phone: (619) 869-4999
3   Fax: (619) 475-6296
    e-mail: mattparelawca@gmail.com
4

5

6

7

8
                    **UNITED STATES DISTRICT COURT**
9
      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
10

11  JOE HAND PROMOTIONS, INC.,            )  Case No.: 3:12-cv-04361-JSW
                                          )
12              Plaintiff,                )  **NOTICE OF MOTION AND MOTION FOR**
                                          )  **SUMMARY JUDGMENT ON BEHALF OF**
13  vs.                                   )  **DEFENDANTS OR IN THE ALTERNATIVE**
                                          )  **PARTIAL SUMMARY JUDGEMNT;**
14  ESQUIVEL SANTANA & VERONICA           )  **DECLARATIONS OF ESQUIVEL**
    SANTANA, individually and as officers,)  **SANTANA, VERONICA SANTANA, JOSE**
15  directors, shareholders, and/or principals of )  **JUAN GUZMAN, AND ATTORNEY**
    SANTANA ESG, INC. d/b/a MIS           )  **MATTHEW A. PARE, FILED**
16  ANTOJITOS, and SANTANA ESG, INC.      )  **CONCURRENTLY**
    d/b/a MIS ANTOJITOS, JOSE JUAN        )
17  GUZMAN                                )  *[Pursuant to Federal Rules of Civil Procedure,*
                                          )  *Rule 56, and Local Civil Rules 56-1 and 56-2]*
18              Defendants,               )
                JURY TRIAL DEMANDED       )
19                                        )
                                          )  Date: Friday, July 26, 2013
20                                        )  Time:  9:00 a.m.
                                          )  Judge:  Honorable Jeffrey S. White
21  _____      )  Courtroom: Courtroom 11 - 19th Floor

22

23  TO THE HONORABLE JEFFREY S. WHITE, PLAINTIFF JOE HAND PROMOTIONS, INC.,

24  AND ITS ATTORNEY OF RECORD:

25          PLEASE TAKE NOTICE that on Friday, July 26, 2013, at 9:00 a.m. or as soon thereafter

26  as this matter may be heard by the above-entitled United States District Court, located at United

27  States Courthouse, 450 Golden Gate Avenue, Courtroom 11 - 19th Floor, San Francisco, CA

1   94102, defendants Esquivel Santana, Veronica Santana, Santana Esg, Inc., and Jose Juan Guzman

2   d/b/a Mis Antojitos (collectively "defendants") will present their motion for summary judgment in

3   their favor, or in the alternative partial summary judgment (summary adjudication).  Defendants

4   are requesting that the plaintiff take nothing from them in this case, that they be dismissed on the

5   merits, and that defendants recover their costs and attorney's fees.  In the alternative, defendants

6   are requesting summary adjudication in their favor as to plaintiff's following claims for relief:

7   Count 1 – violation of 47 U.S.C. §605, Count 2 – violation of 47 U.S.C. §553, and the claims for

8   enhanced statutory damages pled pursuant to those statutes, as well as Count 3 – conversion, and

9   the claim for punitive damages.  Defendants are also requesting summary adjudication of the legal

10  issue regarding plaintiff's claims for duplicative recovery, namely that plaintiff cannot recover

11  under both 47 U.S.C. section 605 and 47 U.S.C. section 553, and also cannot recover under either

12  of those TV signal piracy statutes and conversion.

13      This motion is being made pursuant to Federal Rules of Civil Procedure, Rule 56, as well

14  as local Civil Rules 56-1 and 56-2.  This motion is brought on the grounds that there is no legal or

15  factual basis for the liability of defendants in this matter.  The motion is based on this Notice of

16  Motion and Motion, the Memorandum of Points and Authorities filed herewith, the declarations of

17  defendants Esquivel Santana, Veronica Santana, Jose Juan Guzman, and attorney Matthew A. Pare,

18  filed concurrently, the legal authorities and cases submitted, and upon such other matters as may be

19  presented to the Court at the time of the hearing.

20  DATED: June 20, 2013                    LAW OFFICE OF MATTHEW PARE, APC

21

22                                          By:    /s/ Matthew A. Paré
                                            _____
23                                          Matthew A. Paré, Esquire
                                            Counsel for Defendants

24

25

26

27

1                   **MEMORANDUM OF POINTS AND AUTHORITIES**

2                                     **I.**

3                **INTRODUCTION AND FACTUAL BACKGROUND**

4       This case stems from the exhibition of a television program, specifically UFC 142: Aldo v.

5 Mendes Broadcast, on January 14, 2012, at the establishment known as Mis Antojitos, located at

6 2598 Harrison Street, San Francisco, CA 94110. The plaintiff in this action, Joe Hand Promotions,

7 Inc. alleges that it has the exclusive closed circuit distribution rights to the subject television

8 program, and defendants did not pay Joe Hand Promotions, Inc. for the rights to show the subject

9 television program but nevertheless exhibited it in the place of business.

10       At the time of the alleged events giving rise to this lawsuit the subject premises were not in

11 the control of defendants Esquivel Santana, Veronica Santana, and Santana Esg, Inc. and those

12 three defendants did not even have an ownership interest in the business establishment at that time.

13 (Declarations of Veronica Santana and Esquivel Santana at ¶2 and Declaration of Jose Juan

14 Guzman at ¶2.) In December of 2011 they sold the business to Jose Juan Guzman. *Id.* As the

15 sworn testimony of defendants illustrates, at the time of the events giving rise to this lawsuit

16 defendants Esquivel Santana, Veronica Santana, and Santana Esg, Inc. had absolutely no control

17 whatsoever over what was being done in that premises. *Id.* There was a period of time following

18 the sale of the business during which the liquor license with the California Department of

19 Alcoholic Beverage Control continued to have their names on it, but as of December of 2011 they

20 had no ownership in that establishment and no control over the activities being conducted there.

21 *Id.* In fact, those three defendants literally did not even have a key to the business at that time. *Id.*

22 Given their complete lack of involvement whatsoever, and lack of supervisory capacity and

23 control, they cannot be liable to Joe Hand Promotions, Inc. for its claims in this case. If there was

24 any TV program that was shown at Mis Antojitos on January 14, 2012, it was done without their

25 consent, permission, authorization, or even knowledge. *Id.* at ¶3. And again, given their lack of

26 ownership and control over the business in January of 2012, they simply had no connection with

27 anything that was going on there. Defendants Esquivel Santana, Veronica Santana, and Santana

1   Esg, Inc. did not control the TVs there at that time, and did not in any way gain anything from the

2   alleged exhibition of the TV program even if it was displayed.  *Id.*

3        Although defendant Jose Juan Guzman was the owner of Mis Antojitos at the time of the

4   incident, he too is entitled to summary judgment in this matter for the following reasons.  It was

5   Mr. Guzman's understanding that he had a legitimate and lawful television service at Mis

6   Antojitos, and therefore it was his understanding that anything that would have been displayed on

7   televisions there was appropriately paid for and legal.  (Declaration of Jose Juan Guzman at ¶2.)

8   He was not aware and had no reason to believe that his actions in any way constituted a violation

9   of the law.  *Id.*  There was no interception or theft of a TV signal and therefore he cannot be liable

10   for the statutory violations alleged by the plaintiff in its complaint or the other causes of action (or

11   counts) in the complaint.  He was simply using the TV system that had been professionally

12   installed at the business and did not realize that he might be paying the wrong price for that type of

13   a TV account.  *Id.*  Mr. Guzman certainly did not authorize that any TV signal be intercepted or TV

14   programming displayed without properly paying for it.  *Id.*  He did not give his consent or

15   permission for that to happen, and it was not done with his knowledge.  *Id.*  At the time of the

16   alleged incident he had recently purchased the business Mis Antojitos in December of 2011, and

17   had no reason to believe that anything I was showing on the TVs there was in any way improper.

18   *Id.*  Furthermore, he did not gain anything from having this particular TV program on the TV at

19   Mis Antojitos, even if the TV program at issue was displayed at the business.  There was no

20   increase in sales or revenue on that particular day when compared with other similar days in that

21   time period so there was no financial benefit that could be attributed to the exhibition of that

22   program.  *Id.*  There were literally only a handful of people there at the business on that day, nearly

23   all of whom were either Mr. Guzman's personal friends or workers at the restaurant.  *Id.*

24        Based upon the above-described reasons Mr. Guzman should not be liable for anything in

25   this case.  If he is found liable, however, at a minimum there must be partial summary judgment in

26   his favor as to the claims for enhanced statutory damages and punitive damages as there was no

27   intentional or willful wrongdoing at all.  Additionally, there was no advertising that this TV

1  program was going to be shown, there was no cover charge that was charged or a premium on food

2  and beverages or a minimum purchase requirement, and there were very few customers on that day.

3  *Id*. at ¶3.  This business is also a small local business and there was no intent to profit by showing

4  this event, nor any real profit attributable to the incident.  *Id*.

5        For all of these above-described reasons as well as the legal reasons and arguments

6  outlined herein below defendants request summary judgment in their favor.

7                                                **II.**

8                **THE STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

9        Federal Rules of Civil Procedure, Rule 56 provides in pertinent part as follows:

10       A party may move for summary judgment, identifying each claim or defense - or the part of
         each claim or defense--on which summary judgment is sought.  The court shall grant
11       summary judgment if the movant shows that there is no genuine dispute as to any material
         fact and the movant is entitled to judgment as a matter of law.
12

13                                               **III.**

14                                           **ARGUMENT**

15    **1.**      **Defendants Esquivel Santana, Veronica Santana, and Santana, Esg, Inc. are**

16            **Entitled to Summary Judgment in Their Favor Given that They Did not Own**

17            **or Operate Mis Antojitos Restaurant at the Time of the Incident**

18        As verified in the three declarations being submitted herewith, Esquivel Santana, Veronica

19  Santana, and Santana Esg, Inc. sold the business Mis Antojitos to Jose Juan Guzman in December

20  of 2011.  (Declarations at ¶2.)  The alleged incident wherein the subject TV program was exhibited

21  at Mis Antojitos was on January 14, 2012.  At that time the former owners did not have any

22  ownership interest or control of the establishment whatsoever.  *Id*.  Esquivel Santana and Veronica

23  Santana literally did not even have a key to the premises.  *Id*.  They are simply the wrong

24  defendants in this case.

25        The only conceivable argument that could possibly be made to hold these three particular

26  defendants liable is that their names continued to appear on the liquor license issued by the

27

1   California Department of Alcoholic Beverage Control.  However, it is very often the case that the

2   named licensee on the liquor license is not immediately changed upon a transfer in ownership of

3   this type of establishment, and multiple TV signal piracy cases addressing this issue have held that

4   merely being listed on the liquor license is insufficient to hold someone liable in a case of TV

5   signal piracy such as this.

6           In another television signal piracy case where plaintiff Joe Hand Promotions, Inc. obtained

7   a default against a defendant whose name appeared on the liquor license, the court set aside the

8   entry of default, and expressed its concerns as follows:

9           The court is concerned about the draconian result emerging from haphazard practice in this
            case.  It appears that the only basis upon which Joe Hand premises a claim against O'Shea
10          is the fact that a liquor license remained in O'Shea's name for some period of time after he
            sold the bar.  *Joe Hand Promotions, Inc. vs. Tip Off, Inc.* (2010) U.S. Dist. LEXIS 15686.
11

12          The only possible conclusion to draw from the case of *Joe Hand Promotions, Inc. v. Tip*

13  *Off, Inc.* is that being named on the liquor license of a bar that is accused of illegally showing a

14  pay-per-view program is not by itself sufficient to result in individual liability against the named

15  individual.  Such a rule makes sense because otherwise individuals would be found liable for

16  potential activities that they simply had nothing to do with.  The specific rule that should be

17  extracted and govern from the case of *Joe Hand Promotions, Inc. vs. Tip Off, Inc.* is essentially

18  that in the context of a television signal piracy lawsuit the name on the liquor license itself is

19  insufficient to establish liability.

20          Indeed, multiple other cases have explicitly held or stated that being named on a liquor

21  license is insufficient grounds to hold a defendant liable in a signal piracy case.  For example, in

22  the case of *Joe Hand Promotions, Inc. vs. David Alvarado, et al.*, 2011 WL 1740536 (E.D. Cal.)

23  the court stated that "[t]he Alvarados' names appearing on the liquor license is insufficient to

24  subject them to liability under Joe Hand's federal communications claims."  *Id.* at 7.  Another

25  signal piracy case actually addresses that particular issue of the liquor license head-on, specifically

26  *Joe Hand Promotions, Inc. vs. Thomas Rich McInnis*, 2011 WL 1740109 (N.D.Cal.).  In that case

27  on page 8 and page 9 the court goes into a lengthy discussion of how being named on the liquor

1     license is simply insufficient to pin liability on a defendant for signal piracy.

2          The case of *Joe Hand Promotions, Inc. vs. Thomas Rich McInnis*, 2011 WL 1740109

3     (N.D.Cal.) is also significant and noteworthy because of its discussion on what the plaintiff must

4     establish in order to prevail in a signal piracy case alleged under 47 U.S.C. §605 and 47 U.S.C.

5     §553 in order to prevail.  In particular, the court stated that "[l]iability under section 605 requires

6     proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or

7     published, or aided the divulging or publishing of, a communication transmitted by the plaintiff by

8     wire or radio."  It goes on to state that "Section 553 provides in pertinent part, "No person shall

9     intercept or receive or assist in intercepting or receiving any communications service offered over

10    a cable system, unless specifically authorized to do so…"  *Id*. at 9.  At the very end of the opinion

11    the court stated that "[i]n order to establish liability and collect damages under either 47 U.S.C.

12    §605 or 47 U.S.C. §553, Joe Hand must establish at trial that McInnis or Unger actually violated

13    one of these statutes.  A general showing that either Defendant illegally intercepted the Program

14    will not be sufficient."

15          In this case, plaintiff Joe Hand Promotions, Inc.'s only possible argument that defendants

16    Esquivel Santana, Veronica Santana, and Santana Esg, Inc. should be liable is that their names

17    were on the liquor license.  That is insufficient, however, to pin liability on the part of these

18    defendants according to the several authorities cited and described above.  It is also not uncommon

19    for names to continue to appear on liquor licenses after they are no longer actually running a

20    business or involved with it at all.  Because defendants Esquivel Santana, Veronica Santana, and

21    Santana Esg, Inc. were not involved with what was taking place at the premises at that time

22    whatsoever, and certainly not the ones behind any signal piracy that may have occurred, they

23    cannot be liable.  The plaintiff also has no necessary evidence to show that defendants Esquivel

24    Santana, Veronica Santana, and Santana Esg, Inc. actually violated one of these statutes as

25    described in the case of *Joe Hand Promotions, Inc. vs. McInnis*.  Therefore, defendants Esquivel

26    Santana, Veronica Santana, and Santana Esg, Inc. are entitled to summary judgment in their favor.

27    / / /

1    2.    **All Defendants Are Entitled to Summary Judgment in Their Favor Because**

2          **They did Not Authorize The Piracy, Control the TVs, and Derive a Benefit**

3          **From It**

4    In order to hold defendants liable for a violation of 47 U.S.C. section 605 and 47 U.S.C.

5    section 553, there are certain elements that the plaintiff must prove.  This United States District

6    Court for the Eastern District of California has identified those elements in the case of *Joe Hand*

7    *Promotions, Inc. vs. David Alvarado, et al*., 2011 WL 1740536 (E.D. Cal.) to be as follows:

8          1. The defendant had control over the television at the time of the alleged signal piracy;

9          2. The defendant Authorized the violation; and

10          3. The defendant derived a benefit from the alleged signal piracy.  *Id*. at *7.

11    Those elements were originally derived from the case of *J & J Sports Productions, Inc. v.*

12    *291 Bar & Lounge, LLC* (E.D.N.Y. 2009) 648 F.Supp.2d 469; see also *J & J Sports Productions,*

13    *Inc. v. Kevin Daley* (E.D.N.Y. 2007) U.S. Dist. LEXIS 49839.

14    Another recent summary judgment decision in a TV signal piracy case commented that

15    those three above-described elements are appropriate to apply when analyzing questions of

16    individual liability in a TV signal piracy case.  *Joe Hand Promotions, Inc. v. Albright*

17    Slip Copy, 2013 WL 2449500 at *4 (E.D.Cal. June 5, 2013).  In *Albright* there was only one

18    defendant so no need to analyze individual liability, but clearly in this case there are multiple

19    individual defendants and a corporate defendant so these above-described elements are appropriate

20    to use and provide the standard that the plaintiff must establish in order to hold defendants liable

21    for TV signal piracy.

22    In this present case, there is no evidence to suggest that plaintiff can establish these three

23    required elements against any defendants.  With respect to defendants Esquivel Santana, Veronica

24    Santana, and Santana Esg, Inc. none of the three elements are met because they did not control the

25    TVs, authorize the violation, or derive any benefit from it.  The declarations submitted herewith

26    demonstrate that they did not control the TVs, authorize the violation, or derive any benefit from

27    it, especially given their lack of ownership of the business at the time.  With respect to defendant

1   Jose Juan Guzman, he did control the TVs at the time in question at Mis Antojitos, but the other

2   two elements are not satisfied because he did not authorize any violation and did not gain from it.

3   Therefore, all of the defendants are entitled to summary judgment in their favor.

4       3.    **At Least All of the Individual Defendants are Entitled to Summary Judgment**

5           **in Their Favor Because Plaintiff Cannot Pierce The Corporate Veil and Hold**

6           **the Individual Defendants Liable in this Case**

7       Defendants strenuously contend that summary judgment should be granted to all of them

8   for the reasons articulated above.  Even if, however, the Court is inclined to possibly not grant

9   summary judgment in favor of defendant Santana Esg, Inc. it is clear that at a minimum the

10   individual defendants Esquivel Santana, Veronica Santana, and Jose Juan Guzman should be

11   granted summary judgment in their favor as there is no reason to assert individual liability in this

12   case (i.e. pierce the corporate veil) when there is also a corporate defendant involved.

13       In cases of TV signal piracy there are at least three approaches or legal standards that have

14   been used to ascertain whether piercing the corporate veil is appropriate to hold individual

15   defendants liable when there is also a business entity defendant such as a corporation.  First, there

16   is the "no distinction" approach.  That test is basically whether or not there was "no distinction"

17   between the individual's actions and that of the corporation.  See e.g. *Comcast of Illinois X v.*

18   *Multi-Vision Electronics, Inc.*, 491 F.3d 938, 947-948 (8th Cir. 2007); *Joe Hand Promotions, Inc. v.*

19   *Sharp*, 885 F.Supp.2d 953, 956 (D.Minn., August 14, 2012.)  Second, there is the "traditional"

20   approach, where you would look at the Black Letter law elements such as whether there was

21   insufficient capitalization and a failure to observe corporate formalities, and whether there was a

22   co-mingling of funds between the individual and the corporation, for example.  Third, there is the

23   "benefit and control" approach.  This approach analyzes whether the individual defendant

24   authorized the violations or had both a right and ability to supervise the violations and a "strong

25   financial interest" in such activities.  See e.g., *J & J Sports Productions, Inc. v. Betancourt*

26   2009 WL 3416431 at *2 (S.D.Cal., October 20, 2009); see also *J & J Sports Productions, Inc. v.*

27   *Flores*, 2012 WL 6608915 at *4 (E.D.Cal., December 18, 2012.) (noting that this rule applies to

1    analyze whether to hold individual defendants liable when there is also a corporate defendant in a

2    TV signal piracy case.)  Incidentally, this "benefit and control" approach was originally derived

3    from Copyright law and it is very similar to the three elements described in section 2, *supra*, to

4    analyze whether to hold individuals liable in TV signal piracy cases.

5           In analyzing whether there should be individual liability in TV signal piracy cases with a

6    corporate defendant courts have been somewhat stern towards the plaintiffs.  For example, in the

7    case of *J & J Sports Productions, Inc. v. Kevin Daley* (2007) U.S. Dist. LEXIS 49839 at *10 the

8    United States District Court for the Eastern District of New York did not hold the defendant

9    (Daley) liable in his individual capacity in a television signal piracy case and cautioned that "J&J

10   should in the future take care not to sue individuals without any reasonable basis for so doing."

11   The court stated as follows:

12

13   >    There is no evidence that Daley had any knowledge that the Event would be exhibited at
     >    Kev's, that he had any control over what was being displayed on its television when Larkin

14   >    visited, or that he derived any benefit from the fact that the Event was displayed. Nor does
     >    logic support the inference that Daley as an "officer, director, shareholder and/or principal"

15   >    of Kev's had the kind of control J&J asserts. . . . there is nothing in the record to
     >    demonstrate which of those various positions, if any, Daley actually held. As a result, there

16   >    is no basis to assume that Daley enjoyed supervisory control (a shareholder or director
     >    might not have such authority), or that he had a financial stake in the business (an officer or

17   >    director might not have such an interest). In short, there is nothing other than speculation to
     >    support the conclusion that Daley played any part in the violations of the FCA committed

18   >    by Kev's, and even less to support the conclusion that any role he did play would warrant
     >    imposing individual liability.

19

20

21          In another television signal piracy case, *J & J Sports Productions, Inc. v. 291 Bar &*

22   *Lounge, LLC* (E.D.N.Y. 2009) 648 F.Supp.2d 469, 473, the court again found that individual

23   liability on the part of the defendant was not appropriate.  The Court stated in part as follows:

24

25   >    J&J asserts liability against both the corporate defendant and Dennis Caba, individually,
     >    who is alleged to be the owner of 291 Bar. See Complaint. P 6. This, however, constitutes

26   >    the  [*6] entire extent of the allegations against Mr. Caba individually. Individual liability
     >    under the Cable Act requires that the individual authorize the underlying violations. See

27   >    J&J Sports Productions, Inc. v. Benson, No. 06-CV-1119, 2007 U.S. Dist. LEXIS 21779,

1    2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007). Put differently, the complaint must
     establish that the individual had a "right and ability to supervise" the violations, as well as
2    an obvious and direct financial interest in the misconduct. Softel, Inc., v. Dragon Medical
     and Scientific Communications, Inc., 118 F.3d 955, 971 (2d Cir. 1997). The complaint
3    here makes no such allegations. In such circumstances, it would not be appropriate to hold
     an individual jointly and severally liable along with the business entity. See generally J&J
4    Sports Productions v. Daley, No. 06-CV-238, 2007 U.S. Dist. LEXIS 49839, (E.D.N.Y.
5    Feb. 15, 2007) (discussing and applying the legal bases for imposing individual liability in
     cable theft cases). In Daley, the plaintiff made even more extensive allegations of control
6    and supervision on the part of the individual owner than in the instant case, but the court
     nevertheless declined to extend individual liability to the defendant. Id. (declining to
7    impose individual  [*7] liability in spite of conclusory allegations in complaint that
8    individual had "supervisory control over the infringing activities");

9         The Court in *291 Bar & Lounge, LLC* went on to explain that the plaintiff in that case

10   made no allegation that defendant Mr. Caba was present for the violation, that he authorized or

11   controlled it, or that he reaped commercial profit from it.  Similar to the court's opinion in *Kevin*

12   *Daley*, the court in *291 Bar & Lounge, LLC* again cautioned the plaintiff as follows: "To the extent

13   that J&J wishes to assert liability against an individual in the future, it should make adequately

14   detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership

15   of the offending entity."  The court went on to state that quite simply that "[i]f the plaintiff wishes

16   to assert liability against an individual, it must adduce an adequate basis for doing so."  *Id.*

17        Here, in this case, regardless of which of the three legal approaches this Court takes to

18   evaluate possible individual liability there is no basis to hold defendants Esquivel Santana,

19   Veronica Santana, or Jose Juan Guzman individually liable.  There is no evidence that there is "no

20   distinction" between the corporation and the individuals.  There is no evidence of traditional

21   piercing corporate veil elements such as undercapitalization and lack of following corporate

22   formalities.  Finally, there is no evidence that these individual defendants authorized the violation,

23   controlled the violation or supervised it, or derived any benefit from it whatsoever (let alone had a

24   strong financial interest.)

25        Therefore, this Court should grant summary judgment in favor of the individual defendants

26   Esquivel Santana, Veronica Santana, and Jose Juan Guzman.

27   / / /

28

1      4.      **Defendants Are Entitled to Summary Judgment in Their Favor Regarding the**

2              **Conversion Claim of Plaintiff**

3      The analysis above primarily dealt with the legal issues surrounding TV signal piracy

4  claims under 47 U.S.C. section 605 and 47 U.S.C. section 553.  All defendants are also entitled to

5  summary judgment in their favor regarding plaintiff's claim for conversion too.  Plaintiff Joe Hand

6  Promotions, Inc.'s claim for conversion (count 3) against defendants herein is predicated upon the

7  alleged violations of 47 U.S.C. section 605 and 47 U.S.C. section 553, in that plaintiff contends

8  defendants' statutory violations constituted a disposition of the subject program in a manner

9  inconsistent with plaintiff's rights in the program.  Inasmuch as defendants are successful in their

10  request for summary judgment in their favor regarding the alleged violations of 47 U.S.C. section

11  605 and 47 U.S.C. section 553, therefore, defendants are also entitled to a judgment in their favor

12  regarding plaintiff's claim for conversion.  See *J & J Sports Productions, Inc. v. Flores*, 2012 WL

13  6608915 (E.D. Cal., December 18, 2012, at *11) (granting summary judgment as to plaintiff's

14  conversion claim following defendants' successful summary judgment as to the plaintiff's claims

15  for statutory signal piracy).

16     5.      **As an Additional Basis to Grant Summary Judgment in Favor of Defendant**

17              **Jose Juan Guzman Regarding Plaintiff's Claims for Violation of 47 U.S.C.**

18              **Section 605 and 47 U.S.C. section 553, Plaintiff's Claims Are Time-Barred by**

19              **the Applicable Statute of Limitation**

20     The federal statutes 47 U.S.C. section 605 and 47 U.S.C. section 553 do not identify a

21  statute of limitations, so the courts must look to an analogous state law to determine the

22  appropriate statute of limitations to use.  For TV signal piracy cases in California the 9th Circuit

23  has concluded that the statute of limitation is one-year.  *Directv, Inc. v. Scott Webb* 545 F.3d 837

24  (9th Cir. 2008) (using a one-year statute of limitations based upon the analogous California Piracy

25  Act).

26     In this case, the alleged incident was on January 14, 2012, and Jose Juan Guzman was not

27  named as a defendant in this case until the First Amended Complaint was filed on April 18, 2013

1   (Document 32 in this matter). That was well over the one-year limit, and given that plaintiff hired

2   an investigator who personally witnessed the event on TV at Mis Antojitos on that day that is

3   when the cause of action accrued. Naturally, plaintiff will argue that the doctrine of relation-back

4   amendments applies based upon Federal Rule of Civil Procedure 15(c)(1)(B) which states that it

5   relates back (to the date of the filing of the original complaint) if "the amendment asserts a claim

6   or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set

7   out--in the original pleading." In this case, however, plaintiff made a conscious decision not to

8   name Jose Juan Guzman in the original complaint; the plaintiff did not attempt to name him in the

9   original complaint, despite being in touch with Mr. Guzman for well over a year regarding this

10   possible claim.

11       **6.**     **In the Alternative, The Court Should Grant Partial Summary Judgment in**

12                     **Favor of Defendants as to Plaintiff's Claims for Enhanced Statutory Damages**

13       The primary statutes that the plaintiff Joe Hand Promotions, Inc. is using to sue defendants

14   under in this case are 47 U.S.C. section 605 and 47 U.S.C. section 553, the federal TV signal

15   piracy statutes. The relevant part of 47 U.S.C. section 605 regarding the types of damages that the

16   plaintiff can recover is as follows:

17

18       (i) Damages awarded by any court under this section shall be computed, at the election of
        the aggrieved party, in accordance with either of the following subclauses;

19           (I) the party aggrieved may recover the actual damages suffered by him as a result
          of the violation and any profits of the violator that are attributable to the violation

20           which are not taken into account in computing the actual damages; in determining
          the violator's profits, the party aggrieved shall be required to prove only the

21           violator's gross revenue, and the violator shall be required to prove his deductible
          expenses and the elements of profit attributable to factors other than the violation;

22           or
          (II) the party aggrieved may recover an award of statutory damages for each

23           violation of subsection (a) of this section involved in the action in a sum of not less
          than $1,000 or more than $10,000, as the court considers just, and for each

24           violation of paragraph (4) of this subsection involved in the action an aggrieved
          party may recover statutory damages in a sum not less than $10,000, or more than

25           $100,000, as the court considers just.

26       (ii) In any case in which the court finds that the violation was committed willfully and for

27       purposes of direct or indirect commercial advantage or private financial gain, the court in

its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. section 605(e)(3)( C).

In other words, under this statutory scheme there is a normal range of statutory damages from $1,000.00 to $10,000.00, and under extraordinary circumstances in both directions the statutory damages can be reduced to $250.00, or increased over $10,000.00 up to $100,000.00. The statutory damages above $10,000.00 is the "enhanced statutory damages."

The relevant part of the statute 47 U.S.C. section 553 is extremely similar and provides in pertinent part as follows:

(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

(B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

(C) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

47 U.S.C section 553(c)(3).

In other words, under this statutory scheme (very similar to the other statute) there is a normal range of statutory damages from $250.00 to $10,000.00, and under extraordinary circumstances in both directions the statutory damages can be reduced to $100.00, or increased over $10,000.00 up to $50,000.00.  The statutory damages above $10,000.00 is the "enhanced

1    statutory damages."  Although the amounts under 47 U.S.C. section 553 are different than 47

2    U.S.C. section 605, in concept it is the same logic that under extraordinary circumstances the

3    plaintiff could recover enhanced statutory damages over $10,000.00.

4         In this case the Court should grant partial summary judgment as to plaintiff's claims for

5    enhanced statutory damages.  Again, the specific parts of these statutes that identify the

6    requirements for enhanced statutory damages under the federal TV signal piracy laws are as

7    follows:

8         47 U.S.C. 605(e)(c)(ii) provides as follows:

9
     In any case in which the court finds that the violation was committed willfully and for
10   purposes of direct or indirect commercial advantage or private financial gain, the court in
     its discretion may increase the award of damages, whether actual or statutory, by an amount
11   of not more than $100,000 for each violation of subsection (a) of this section.

12        47 U.S.C. §553( c)(3)(B) provides as follows:

13
     In any case in which the court finds that the violation was committed willfully and for
14   purposes of commercial advantage or private financial gain, the court in its discretion may
     increase the award of damages, whether actual or statutory under subparagraph (A), by an
15   amount of not more than $50,000.

16        In this case, there is simply no evidence that defendants committed a "willful" violation of

17   either of these statutes for the purpose of commercial advantage or private financial gain, and thus

18   plaintiff Joe Hand Promotions, Inc. is not entitled to recover those enhanced statutory damages.

19   See the Declarations of defendants, filed concurrently.

20        The term "willfully" indicates a certain mindset or *mens rea*.  In other words, it must have

21   been done intentionally or on purpose in order to justify an award of enhanced statutory damages.

22   In the present case there is simply no supporting evidence of any kind to indicate that defendants

23   committed a "willful" violation in this case to justify an award of enhanced statutory damages.

24        Case law has also instructed that willfulness is defined as "disregard for the governing

25   statute and an indifference for its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S.

26   111, 126–27 (1985).  In the context of TV signal piracy cases, in order to arrive at an enhanced

27   damage figure, courts have considered factors such as defendants' unlawful monetary gains,

1   plaintiff's significant actual damages, whether defendants advertised for the event and whether

2   defendant collected a cover charge on the night of the event, for example.

3          In this case, there is no evidence establishing the presence of any of the factors identified

4   above to justify an award of enhanced statutory damages.  The statutory language makes clear that

5   only certain cases of alleged TV signal piracy justify an award of enhanced statutory damages, not

6   all cases, and thus in order to give meaning to the statutory language itself there cannot be

7   enhanced damages in a case like this where there are no aggravating circumstances.  It is

8   anticipated that the plaintiff will suggest that signals do not descramble spontaneously, but that

9   type of approach for determining if there is a willful violation is contrary to the statutory language

10  itself because that approach would mean every case of alleged TV signal piracy is willful and

11  clearly the statute contemplates that only the more severe cases are willful to justify the enhanced

12  statutory damages.

13         Therefore, this Court should grant partial summary judgment in defendants' favor as to

14  plaintiff's claims for enhanced statutory damages under the federal TV signal piracy statutes.

15         **7.      In the Alternative, The Court Should Grant Partial Summary Judgment in**

16                 **Favor of Defendants as to Plaintiff's Claim for Punitive Damages**

17         California Civil Code section 3294 is the applicable state law regarding punitive damages

18  in California.  Although the plaintiff did not specifically cite this statute in requesting exemplary

19  and punitive damages, this is the authority that potentially would authorize such damages.  It

20  provides in pertinent part as follows:

21         In an action for the breach of an obligation not arising from contract, where it is proven by

22         clear and convincing evidence that the defendant has been guilty of oppression, fraud, or
           malice, the plaintiff, in addition to the actual damages, may recover damages for the sake

23         of example and by way of punishing the defendant.  California Civil Code section 3294(a).

24  The statute goes on to define oppression, fraud, and malice as follows:

25         (1) "Malice" means conduct which is intended by the defendant to cause injury to the

26         plaintiff or despicable conduct which is carried on by the defendant with a willful and
           conscious disregard of the rights or safety of others.

27         (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust

1  hardship in conscious disregard of that person's rights.
2  (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material
   fact known to the defendant with the intention on the part of the defendant of thereby
   depriving a person of property or legal rights or otherwise causing injury.
3

4      In this case, particularly given the above-described standards, there is no evidence to

5  support plaintiff's claim for punitive or exemplary damages, and thus partial summary judgment as

6  to that request for damages is appropriate.

7      Therefore, this Court should grant partial summary judgment in defendants' favor as to

8  plaintiff's claim for punitive damages.

9      **8.    The Plaintiff Cannot Recover the Duplicative Recovery it Has Pled and Prayed**

10          **for and Thus the Court Should Grant Partial Summary Judgment in Favor of**

11          **Defendants in that Regard**

12          **1.    The Plaintiff Cannot Recover for Both Violation of 47 U.S.C. section**

13              **605 and 47 U.S.C. section 553**

14      Overwhelming authority supports the proposition that plaintiffs cannot recover under both

15  of these sections in the same case.  See e.g., *Cablevision v. Skyes* (2nd Cir. 1993) 997 F.2d 998;

16  *Universal Sports Network, Inc. v. Jiminez* (N.D. Cal. 2002) WL 31109707; *Kingvision Pay Per*

17  *View v. Ortega* (N.D. Cal. 2002) WL 31855367; *Kingvision Pay-Per-View v. Guzman* (N.D. Cal.

18  2009) WL 1475722; *Joe Hand Promotions, Inv. v. Pete* (N.D. Cal. 1999) WL 638215; *Don King*

19  *Prods. v. Maldonado* (N.D. Cal. 1996) WL 682006; *Joe Hand Promotions, Inc. v. Dailey* (N.D.

20  Cal. 2003) WL 1342998; *Kingvision Pay-Per-View, Ltd. v. Backman* (N.D. Cal. 2000) 102

21  F.Supp.2d 1196, 1197.  These cases are only some of the many, many more that could be cited for

22  this particular rule of law.  Indeed, many practitioners in this area of law will acknowledge in their

23  pleadings (i.e. complaint) that the plaintiff can only recover for one of those sections, not both, but

24  some discovery is necessary in order to ascertain what is the appropriate section.

25      It is well established that a defendant violates 47 U.S.C §553 if he intercepts a cable signal,

26  and he violates 47 U.S.C. §605 if he intercepts a satellite broadcast.  See e.g., *J & J Sports*

27  *Productions, Inc. v. Man Thi Doan* (N.D. Cal. 2008) WL 4911223; *J & J Sports Productions, Inc.*

1    *v. Steve Sang Ro* (2010) U.S. Dist. LEXIS 21425, citing *J & J Sports Productions, Inc. v. Manzano*

2    (2008) U.S. Dist. LEXIS 84931, which states that "a signal pirate violates section 553 if he

3    intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he

4    cannot violate both by a single act of interception." Similarly, one court has stated as follows:

5         Since §605 covers satellite communications and §553 covers cable, guilt under one statute

6         is a defense to the other. *J & J Sports Prods. v. Prado*, 2008 U.S. Dist. LEXIS 29519, at

7         *7 (E.D. Cal. Mar. 27, 2008.)

8    Therefore, the simple reason that a defendant cannot be liable for both sections at once is because

9    these two laws apply to different types of signals (satellite versus cable).

10        In conclusion, defendants respectfully request a legal ruling that the plaintiff in this instant

11   matter can at best only recover under either 47 U.S.C. section 605 or 47 U.S.C. section 553, not

12   both.

13        **2.    The Plaintiff Cannot Recover for Both Conversion and Statutory**

14             **Signal Piracy (47 U.S.C. section 605 and 47 U.S.C. section 553)**

15        It is well established that in a television signal piracy case the plaintiff cannot recover

16   duplicative recovery for both conversion and violation of 47 U.S.C. §605, it must be one or the

17   other. There is ample authority for that rule of law. See e.g., *J & J Sports Productions, Inc. v.*

18   *Ferreyra* (2008) WL 4104315 at 1 ("Inasmuch as plaintiff seeks statutory damages rather than

19   actual damages, plaintiff's request for damages for conversion should be denied.) See also,

20   *Garden City Boxing Club, Inc. v. Frezza* (2007) 476 F. Supp.2d 135, 140 (denying recovery for

21   conversion on top of 47 U.S.C. §605 because it would be duplicative); *J & J Sports Prods. v.*

22   *Hernandez* (2010) U.S. Dist. LEXIS 48191 (stating that "an award for conversion damages would

23   be duplicative"); *Joe Hand Promotions, Inc. v. Dock Street Enters. Inc.*, No. 11-1973, 2011 WL

24   6141058, at *5 n. 5 (D.Md., Dec. 8, 2011.); *J & J Sports Prod., Inc. v. J.R. 'Z Neighborhood*

25   *Sports Grille, Inc.*, No. 9-3141, 2010 WL 1838432, at *2 (D.S.C. April 5, 2010); *J & J Sports*

26   *Productions, Inc. vs. Romenski*, 845 F.Supp.2d 703 (2012).

27   / / /

1    In *Joe Hand Promotions, Inc. v. Nguyen*, 2012 U.S. Dist. LEXIS 49132 at *7 (N.D. CA

2  2012) the court did not strike the affirmative defense that the defendant pleaded of barring plaintiff

3  from obtaining duplicative recovery for conversion and statutory damages.  The court noted as

4  follows:

5

6    Several courts have denied recovery for conversion damages as "cumulative" where
     statutory damages were already awarded.  *DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182,

7    1193, (E.D. Cal. 2005) (having already awarded statutory damages under § 605, the court
     denied plaintiff's additional request for conversion damages as "cumulative and

8    excessive"); see also *Kingvision Pay-Per-View v. Guzman*, No. 09-00217, 2009 U.S. Dist.
     LEXIS 47330, 2009 WL 1475722, at *3 (N.D. Cal. May 27, 2009) (granting default

9    judgment and statutory damages under § 605, while dismissing § 553 and conversion
     claims).

10

11    Additionally, in the case of *J & J Sports Prods. v. Pure Lounge of Columbia, LLC*, 2012

12  U.S. Dist. LEXIS 8277 at *7(Dist. of S. Carolina 2012) the court declined to award duplicative

13  recovery and noted as follows:

14

15    Through its Motion for Default Judgment, Plaintiff asks the court to award damages under
     both 47 U.S.C. § 605 and the common law conversion claim. The court finds that an award

16    under 47 U.S.C. § 605 is appropriate and that any additional award for the conversion
     claim (necessarily a significantly lower award with respect to actual damages) would be

17    duplicative. The court, therefore, awards damages solely under 47 U.S.C. § 605.

18    In the case of *Joe Hand Promotions, Inc. v. Estrada*, 2011 U.S. Dist. LEXIS 61010 at *7

19  (E.D. CA 2011) the court mentioned that the idea of preventing duplicative recovery of damages

20  under statutory TV signal piracy and conversion was something that could be raised as a defense in

21  litigation, although it was not technically an affirmative defense, but simply rather a defense.

22    The case of *Directv, Inc. v. Yancey*, 2005 U.S. Dist. LEXIS 32601 at *11 (W.D. VA 2005)

23  also declined to award the company damages for its 18 U.S.C.S. § 2511 claim (similar to statutory

24  TV signal piracy claims raised in this instant case) or for its conversion claim, as any such

25  recovery would be duplicative.

26    The court in *Time Warner Cable v. Fland*, 1999 U.S. Dist. LEXIS 21155 at *16 (S.D.

27  N.Y.) also declined duplicative recovery and stated as follows:

1
2
3
4
5

Plaintiff also seeks relief under New York Public Service Law § 225.6 and under claims of trespass, conversion and breach of contract. An award of damages under these claims would be duplicative of that under 47 U.S.C. § 605 and would violate "the general principle [*16] that precludes double recovery." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998). See *Time Warner Cable of New York City v. Papathanasis*, 1998 U.S. Dist. LEXIS 22672, 97 Civ. 3537(JSM)(THK), slip op. at 12 (S.D.N.Y. Sept. 22, 1998); *Time Warner Cable of New York City v. Brown*, slip op. at 4 n.3; *Time Warner Cable of New York City v. Barnes*, 13 F. Supp. 2d at 549.

6
7
8
9

Given the number of courts throughout the country that have come to this same conclusion, defendants do believe it is accurate to say that there is overwhelming authority to support this notion that plaintiffs cannot recover for both statutory TV signal piracy and conversion in the same case.

10
11
12
13
14
15
16
17
18
19

In addition to the numerous examples of case law indicating that plaintiff cannot recover for both conversation and statutory signal piracy, this idea is also supported by the statutory language of 47 U.S.C. section 605 itself. In particular, the statute under 47 U.S.C. section 605(e)(C)(i) indicates that "Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses. . ." (emphasis added) and then goes on to describe either "actual damages" or "statutory damages." To allow the plaintiff to recover for conversion damages on top of the statutory damages would effectively be disregarding the notion of plaintiff making an election and allowing for duplicative recovery. In yet another case that declined to award duplicative recovery in this manner the court specifically gave as justification the statutory language as follows:

20
21
22
23
24

Nor has [G & G Closed Circuit Events, LLC] shown that it is entitled to recover actual damages under its conversion theory *in addition* to statutory damages. See section 605(e)(3)( c) ("at the election of the aggrieved party … [it] may recover the actual damages . . . or . . . statutory damages. . .").  *G & G Closed Circuit Events, LLC vs. Fardad Dormanesh*, Case No. 5:10-cv-03528-JW, Document 17, page 5, lines 8-10.  (N.D. CA March 7, 2011).

25
26
27

It is acknowledged that there are also some examples of default judgments or other court rulings granting such duplicative recovery under conversion and statutory signal piracy claims (see e.g. *Joe Hand Promotions, Inc. v. Albright*, Slip Copy, 2013 WL 2449500 at *4 (E.D.Cal. June 5, 2013), but that does not appear to be the trend, the majority opinion, or the well-reasoned

1   approach.

2       In conclusion, defendants respectfully requests a legal ruling that the plaintiff in this instant

3   matter can at best only recover under either conversion (count 3) or one of the signal piracy

4   statutes (counts 1 and 2, violation of 47 U.S.C. section 605 and 47 U.S.C. section 553), not both.

5       **9.**    **Defendants Are Entitled to Recover Their Costs and Attorney's Fees**

6       Based upon this motion for summary judgment and the expected ruling thereon, defendants

7   request recovery of their full costs pursuant to Federal Rule of Civil Procedure 54(d) and

8   attorney's fees in this matter.  It is anticipated that a separate motion will be filed to identify the

9   full extent of those costs and fees, but for purposes of this motion for summary judgment it is also

10   requested that the Court include within its ruling an acknowledgement that the defendants are

11   entitled to such recovery in this matter.  The legal basis for this request is both because the Ninth

12   Circuit has interpreted the attorneys' fees provision in TV signal piracy cases to be a reciprocal

13   provision that allows the district court to award attorneys' fees not only to an aggrieved party who

14   prevails under the statute but also to a prevailing defendant (see *Echostar Satellite Corp. v. NDS*

15   *Group PLC*, 390 Fed.Appx. 764, 767–68 (9th Cir.2010) (unpublished)), and in the Court's

16   discretion in light of the bad-faith that plaintiff has shown throughout this litigation through its

17   failure to dismiss the case voluntarily.  See Declaration of Attorney Matthew A. Pare, filed

18   concurrently.

19       As an additional basis for the award of attorney's fees, see 28 USCS § 1927, and the

20   following authority which discusses the district court's inherent authority to award fees.  *See Int'l*

21   *Union of Petroleum & Indus. Workers v. Western Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir.

22   1983).  A court may assess attorneys' fees "when the losing party has 'acted in bad faith,

23   vexatiously, wantonly, or for oppressive reasons'."  *Alyeska Pipeline Service Co. v. Wilderness*

24   *Society*, 421 U.S. 240, 258-259 (1975).  To put it another way, a prevailing defendant can recover

25   attorneys' fees if the claim brought is frivolous, unreasonable, groundless or made in bad faith.

26   See generally, *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978).  If bas faith is

27   found, an award of attorneys' fees is within the district court's discretion.  *Dogherra v. Safeway*

1   *Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982); *International Union of Petroleum & Industrial*

2   *Workers v. Western* ..., 707 F.2d 425, 428 (9th Cir. 1983). The court of appeal will then only

3   review the district court's decision under the clearly erroneous standard, which is to say that the

4   district court has considerable flexibility in making such an award. *Id.* "Bad faith may be found,

5   not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v.*

6   *Cole*, 412 U.S. 1, 15 (1973). Within these above-described guidelines, an award of attorneys' fees

7   is within the district court's discretion. See *Gluck v. American Protection Industries*, 619 F.2d 30,

8   32 (9th Cir. 1980); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1116-17 (9th Cir.

9   1979); *Dogherra v. Safeway Stores*, 679 F.2d 1293, 1298 (9th Cir. 1982).

10                                              **IV.**

11                                        **<u>CONCLUSION</u>**

12          For all of the reasons discussed above, this Court must grant summary judgment in favor of

13   defendants. Defendants also request recovery of their full costs and attorneys' fees in this matter.

14          Respectfully submitted.

15   DATED: June 20, 2013                    LAW OFFICE OF MATTHEW PARE, APC

16

17                                            By:    /s/ Matthew A. Paré
                                                   _____
18                                                 Matthew A. Paré, Esquire
                                                   Counsel for Defendants

19

20

21

22

23

24

25

26

27

1   Matthew A. Paré, Esq., State Bar No.: 258434
    **LAW OFFICE OF MATTHEW PARE, APC**
2   303 H Street, Suite 435
    Chula Vista, CA 91910
3   Phone: (619) 869-4999
    Fax: (619) 475-6296
4   e-mail: mattparelawca@gmail.com

5

6                  <u>**CERTIFICATE OF SERVICE**</u>

7
            I hereby certify that on June 20, 2013, I electronically filed the foregoing with the Clerk of
8
    the Court using the ECF System which sent notification of such filing to the following:
9
    Marcin Jacek Zurada
10  Attorney at Law
    700 Ygnacio Valley Road, Suite 300
11  Walnut Creek, CA 94596
    415-637-8483
12  925-937-3905 (fax)
    mzurada@vefirm.com
13
    David John Davoli
14  **Davoli Law Firm**
    45 West 21th Street
15  5th Floor
    New York, NY 10010
16  212-929-1649
    212-206-7996 (fax)
17  david@davolilaw.com

18  Matthew A. Paré, Esq., State Bar No.: 258434
    **LAW OFFICE OF MATTHEW PARE, APC**
19  303 H Street, Suite 435
    Chula Vista, CA 91910
20  Phone: (619) 869-4999
    Fax: (619) 475-6296
21  e-mail: mattparelawca@gmail.com

22                              By:      /s/ Matthew A. Paré
                                        _____
23                                       Matthew A. Paré, Esquire

24

25

26

27