UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ESQUIVEL SANTANA, et al.,<br><br>    Defendants. | Case No. 12-cv-04361-WHO<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 37, 40 |

This case arises from the showing of a pay-per-view program at a commercial establishment. Plaintiff Joe Hand Promotions sues four defendants for displaying a program at a commercial establishment without proper licensing, alleging causes of action for: violation of 47 U.S.C. section 605, violation of 47 U.S.C. section 553 and conversion. Defendants move for summary judgment, arguing there is no basis for liability against them and, in the alternative, seeking to narrow the types of damages at stake. Plaintiff also moves for summary judgment against defendant Jose Juan Guzman under 47 U.S.C. section 553. For the reasons discussed below, the Court GRANTS in part and DENIES in part defendants' motion for summary judgment and DENIES plaintiff's motion.

**BACKGROUND**

This case stems from the showing of *UFC 142: Aldo v. Mendes* ("Program") at Mis Antojitos restaurant on January 14, 2012. Affidavit of Margaret Hand-Cicalese, Ex. C. Plaintiff Joe Hand Promotions had the exclusive domestic commercial distribution rights for the Program. *Id*. ¶ 3. For a commercial establishment, with a fire code occupancy of up to 50 patrons, the license fee to broadcast the Program was $900. *Id*., ¶ 8. For a residential location, the fee was

1     $54.99. *Id*. On January 14, 2012, Veronica Porras, an investigator for plaintiff, observed an undercard bout on the *UFC 142: Aldo v. Mendes* Program being broadcast at Mis Antojitos. Exhibit C to the Hand-Cicalese Affidavit. Ms. Porras took three head counts while she was in the restaurant, and counted a maximum of 10 people in the restaurant during the Program. *Id*.

Defendants Esquivel and Veronica Santana are the former owners of Mis Antojitos. Declaration of Esquivel Santana [Docket No. 37-1]; Declaration of Veronica Santana [Docket No. 37-2]. The Santanas assert that they – and defendant corporation Santana Esg., Inc. -- sold their interest in Mis Antojitos to defendant Jose Juan Guzman in "December 2011." Santana Decl. ¶ 2.[1] The Santanas allege that at the time the Program was displayed, they had no control over, or access to, the restaurant. *Id*. The Santanas admit that following the sale, "[t]here was a period of time" during which "the liquor license with the California Department of Alcoholic Beverage Control continued" to have their names on it. *Id*. During that time, the Santanas assert they had no ownership in the restaurant or control over the activities that took place there. *Id*. The Santanas further contend that if any program was illegally shown at Mis Antojitos, it was done without their consent, permission, authorization, or knowledge. *Id*. ¶ 3.

Defendant Jose Juan Guzman declares that he believed he had a legitimate and lawful television service at Mis Antojitos. Declaration of Jose Juan Guzman [Docket No. 37-3] ¶ 2. He believed that "anything that would have been displayed on televisions there was appropriately paid for and legal." *Id*. He contends there was no theft or interception of a TV signal, and that he was simply "using the TV system that had been professionally installed at the business and did not realize that we might be paying the wrong price for that type of a TV account." *Id*. He explains that "[a]t the time of the alleged incident I had recently purchased the business of Mis Antojitos in December 2011, and had no reason to believe that anything I was showing on the TVs there was in any way improper." *Id*. He testifies that he did not benefit from the display of the Program and there was no increase in sales or revenue on that day. *Id*. As he recalls, there were only a handful of people in the restaurant during the time in question, "nearly all of whom were either my

---

[1] The Declarations from Esquivel and Veronica Santana are identical and will be cited as "Santana Decl."

2

personal friends or workers at the restaurant." *Id*. ¶¶ 2-3. Mr. Guzman did not advertise that the Program was going to be shown, did not have a cover charge, and did not charge a premium on food or beverages when the Program was shown. *Id*. ¶ 3.

In support of its motion, plaintiff submits copies of documents dated between May 22 and May 25, 2012, related to an application to transfer the liquor license for Mis Antojitos. Declaration of Martin Zurada, Ex. A. The documents show that Santana Esg., Inc. sought to transfer the license from itself to a partnership between defendant Guzman and Santana Esg., Inc. On the "License Transfer Request," the transferor (Santana Esg., Inc.) certified under penalty of perjury that "the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety days preceding the day on which the transfer application is filed with the Department. . . ." Docket No. 40-2, pg. 6. The License Transfer Request is signed by Esquivel Santana as the corporate officer for Santana Esg., Inc. *Id*.

Plaintiff also submits correspondence between plaintiff's "national coordinating counsel" and defendant Guzman from February 2012. Those documents show that defendant Guzman paid $54.99 on his cable bill for the Program. Declaration of Ryan R. Janis [Docket No. 40-3], Ex. A.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the

3

non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

The Federal Cable Communications Policy Act, 47 U.S.C. § 553, prohibits the unauthorized receipt or interception of communications offered over a cable system. *See* 47 U.S.C. § 553.[2] Section 553 creates a civil cause of action for an aggrieved party and permits the plaintiff to choose between actual and statutory damages. 47 U.S.C. § 553(c)(3)(A). Under section 553(c)(3)(A)(ii), the "party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Additionally, under section 553(c)(3)(B), "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." Finally, under section 553(c)(3)(C), "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100."

Damages for conversion are based on the value of the property at the time of the conversion. *Krueger v. Bank of America*, 145 Cal. App. 3d 204, 215 (1983).

## DISCUSSION

Defendants raise a number of arguments as to why they cannot be held liable for the

---

[2] As noted above, plaintiff sued defendants under both 47 U.S.C. section 553 and 47 U.S.C. section 605, the Federal Communications Act which prohibits unauthorized receipt, publication, or use of satellite programming. In light of defendant Guzman's admissions – both in communications with plaintiff's counsel and in his declaration – plaintiff moves for summary judgment against Mr. Guzman under section 553 only. *See* Plaintiff's Opposition and Motion for Summary Judgment ("Pl. Oppo."), at 1, n1. The Court, therefore, will limit its analysis on these motions to 47 U.S.C. § 553.

4

broadcast of the Program. The Court will address each in turn.

## I. SALE OF INTEREST IN MIS ANTOJITOS

Defendants argue that Esquivel Santana, Veronica Santana and Santana Esg, Inc. cannot be held liable for the broadcast of the Program because they sold their interest in Mis Antojitos to defendant Guzman prior to the date the Program was broadcast. Santana Decl., ¶ 2. Plaintiff responds that summary judgment cannot be granted because of sworn statements defendants made in their application to transfer the liquor license for Mis Antojitos from the Santanas to Mr. Guzman. Specifically, in the License Transfer Request form, the signatory declared under penalty of perjury that the transfer requested in late May 2012 was not made to fulfill "an agreement entered into more than ninety days preceding the day on which the transfer application" was filed.[3] Plaintiff argues that this statement means that the transfer of Mis Antojitos could not have occurred prior to February 22, 2012. Plaintiff's Opposition at 3. Plaintiff contends the statement in the liquor license transfer document creates a disputed issue of fact as to whether the Santanas and Santana Esg, Inc. still maintained an interest in the restaurant at the time of the January 12, 2012 broadcast.

As an initial matter, the Court notes that the liquor license transfer documents at issue were signed on behalf of Santana Esg., Inc., the corporate defendant. Esquivel Santana signed the documents, but only as the corporate officer. The only evidence before the Court regarding the ownership interest of Esquivel and Veronica Santana are their declarations that they sold their interest in December, 2011. Plaintiff asks the Court to speculate that the liquor license documents

---

[3] Defendants object to the admission of the liquor license documents, arguing that plaintiff failed to disclose them in its Rule 26 initial disclosures. Pl. Reply at 3-4. The Court overrules the objection. Plaintiff explains that until defendants raised the issue of their ownership in their motion for summary judgment plaintiff intended to use the documents solely for rebuttal and rebuttal evidence does not need to be included in initial disclosures. *See, e.g., Gribben v. UPS*, 528 F.3d 1166, 1172 (9th Cir. 2008) ("impeachment evidence does not have to be revealed in pretrial disclosures."). Moreover, even if plaintiff should have disclosed its intent to use the liquor license documents in its initial disclosures, the failure to disclose them was harmless because defendants, as signatories of the documents, presumably knew their contents and had access to them. *See* Fed. R. Civ. Proc. 37(c) (party who failed to disclose information prohibited from using it "unless the failure was substantially justified or is harmless.").

5

1  create a dispute as to their ownership, but at most, the liquor license documents raise a material
2  issue of fact as to the corporation since they indicate that the corporation, not the individuals, was
3  the transferor.

4  Defendants argue that simply being named on a liquor license is insufficient to subject the
5  corporation to liability here. *See* Pl. Motion at 67; Pl. Reply at 2.[4] While that is true, plaintiff's
6  point is that the potentially contradictory statements made under penalty of perjury – that Santana
7  Esg., Inc. sold its interest in Mis Antojitos in December 2011 and that the Santana Esg., Inc.
8  transfer of the liquor license was *not* in fulfillment of an agreement related to the sale of the
9  restaurant made *more* than 90 days before May 24, 2012 – is sufficient to raise a material question
10  of fact.

11  Accordingly, the Court finds the documents sufficient to create a material question of fact
12  as to Santana Esg., Inc.'s ownership and financial interest in Mis Antojitos in January 2012.
13  However, as plaintiff has failed to identify any specific facts to dispute the Santanas' declarations
14  that they sold their interest in Mis Antojitos in December 2011, summary judgment must be
15  entered in their favor.

## II. CONTROL, AUTHORIZATION AND BENEFIT

Defendants argue that to establish a violation under section 553, plaintiff must show that defendants had "control over the television," "authorized the violation," and "derived a benefit from the alleged signal piracy." Pl. Motion at 8 (citing *Joe Hand Promotions v. Alvarado*, 2011 U.S. Dist. LEXIS 47662 (E.D. Cal. May 3, 2011)). However, that "heightened" standard applies only "to the question of whether a *corporate* defendant may be held vicariously liable for a violation in his or her individual capacity and as an officer or director of the corporation when *the corporation*, not the individual, is alleged to have committed the violation." *J & J Sports Prods.*

---

[4] *See, e.g., Joe Hand Promotions, Inc. v. McInnis*, 2011 U.S. Dist. LEXIS 52618 (N.D. Cal. May 5, 2011) ("individual's status as a liquor licensee does not establish their liability under §§ 605 and 553."); *Joe Hand Promotions v. Alvarado*, 2011 U.S. Dist. LEXIS 47662 (E.D. Cal. May 3, 2011) (defendants' "names appearing on the liquor license is insufficient to subject them to liability under Joe Hand's federal communications claims.").

6

*v. Flores*, 2012 U.S. Dist. LEXIS 178899, *10-11 (E.D. Cal. Dec. 17, 2012) (emphasis in original). That standard, therefore, does not apply to the question of whether Santana Esg., Inc. or Guzman – as the individual alleged to have shown the Program -- can be held liable for a violation of section 553.[5]

## III. STATUTE OF LIMITATIONS

Defendants argue that the claims against defendant Guzman are barred by the one year statute of limitations applicable to section 553 claims.[6] Defendant Guzman was not named as a defendant until the First Amended Complaint was filed on April 18, 2013, which is more than a year after the alleged violation. Defendants argue that the "relation back" doctrine should not apply because plaintiff knew that defendant Guzman was a potential defendant since at least February 2012, when defendant Guzman notified plaintiff that he "took over" Mis Antojitos and was just learning how the business works. *See* Janis Decl., Ex. A [Docket No. 40-3, pg.6].

Plaintiff responds that at the time of the initial filing and for some time thereafter, plaintiff was attempting to determine whether defendant Guzman was an owner/operator of Mis Antojitos, as opposed to simply an agent of the other defendants. Plaintiff also argues that its investigation was hindered by defendants' "obfuscation (or worse) regarding ownership and/or liquor license status" of Mis Antojitos. Pl. Oppo. at 7.

Under Federal Rule of Civil Procedure 15(c)(1)(C), an amendment to a pleading is related back to the date of the original pleading, when the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[5] Relatedly, defendants argue the individual defendants cannot be held liable because there is a "corporate defendant involved," namely Santana Esg., Inc. Pl. Motion at 9-11. While the line of cases discussed above may protect Esquivel and Veronica Santana (because they are corporate officers and no facts are alleged that they were personally involved in the display of the Program), that doctrine cannot shield defendant Guzman because there is no evidence he is an officer or employee of the corporate defendant, Santana Esg., Inc.

[6] *See, e.g., J & J Sports Productions, Inc. v. Barwick*, 2013 WL 2083123, * 3 (N.D.Cal. 2013) ("the statute of limitations for violations of Sections 553 and 605 is one year.").

7

Fed. R. Civ. Proc. 15(c).

Whether relation-back is appropriate in this case, as the Supreme Court explained in *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485 (2010), depends on whether defendant Guzman "knew or should have known that [he] would have been named as a defendant" in the initial complaint, "but for an error." *Id*. at 2493; *see also id*. at 2494 ("the focus in determining whether relation back is appropriate is on what the party to be added knew," about whether the plaintiff had purposefully or mistakenly not named the potential defendant in the suit).

The Court finds that plaintiff has raised a material question of fact as to whether defendant Guzman should have known that he would have been named as a defendant but for an error or misunderstanding by plaintiff as to Guzman's role. Plaintiff points out that while Guzman admits to be operating Mis Antojitos in his February 2012 emails, it is not clear that he was an owner of the establishment at that time. As plaintiff also notes, the liquor license transfer documents – where Mr. Guzman states under penalty of perjury that the liquor license transfer was not to fulfill an agreement entered into more than 90 days prior to May 24, 2012 – creates ambiguity as to *when* Guzman gained an ownership interest in Mis Antojitos. In light of those ambiguities the Court cannot say as a matter of law that Mr. Guzman *knew* that plaintiff's decision to omit him as a defendant initially was not based on an error or misunderstanding of his role in the ownership of Mis Antojitos.

## IV. ENHANCED STATUTORY DAMAGES AND PUNITIVE DAMAGES

Defendants argue that the Court should find as a matter of law that plaintiff cannot seek "enhanced" statutory damages above the $10,000 limit, because defendants' conduct was not willful to justify damages of up to $50,000 under section 553(c)(3)(C). Plaintiff responds that willfulness is a fact intensive question and generally appropriate for the trier of fact.

Defendant Guzman affirms that he believed he had a legitimate and lawful television service at the restaurant he recently purchased; understood that anything displayed on the televisions would be appropriately paid for and legal; and did not understand he might be paying the wrong price for a commercial establishment. Guzman Decl. ¶ 2. He asserts that he did not

1 gain financially by showing the Program and that the people in the restaurant at that time were
2 mostly his friends and employees. *Id.* The assertions in his declaration are consistent with his
3 statements Mr. Guzman made to plaintiff's counsel in February 2012, just weeks after the
4 Program was shown at Mis Antojitos. Plaintiff has introduced no evidence to counter Guzman's
5 position or to show that anyone (including anyone acting on behalf of the corporate defendant
6 Santana Esg., Inc.) acted willfully to support a claim for enhanced damages. The simple fact that
7 Mr. Guzman showed the Program in a commercial establishment is not enough to establish
8 willfulness.[7] There is no evidence – other than Mr. Guzman's declaration to the contrary – that
9 defendants' purpose was to realize a commercial advantage or that they realized a commercial
10 advantage. The parties agree that there was no advertising that the Program would be shown, no
11 cover charge, and no food or drink minimums required. Finally, plaintiff could have sought
12 discovery on this issue – regarding the initial installation and operation of the cable service at Mis
13 Antojitos and what Guzman understood about that service -- but apparently did not. Having failed
14 to introduce *any* evidence to raise a question of material fact as to willfulness, the Court GRANTS
15 plaintiff's motion to limit the damages at issue to statutory damages.

16 For similar reasons, the Court concludes that plaintiff cannot seek punitive damages
17 against defendants. Under California Civil Code section 3294, punitive damages may be awarded
18 where the defendant has acted with: oppression, meaning "despicable conduct that subjects a

---

[7] Plaintiff relies on a number cases to argue that because Guzman admitted he used a residential cable account to exhibit the Program at a commercial establishment, his willfulness has been established as a matter of law. *See* Pl. Oppo. at 8. That reliance is misplaced, as those cases addressed facts not present in this case. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F.Supp.2d 438, 442 (S.D.N.Y.,2001) ("to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service into the store, or improperly relocate an authorized decoder."); *Time Warner Cable of New York City v. Googies Luncheonette, Inc*., 77 F.Supp.2d 485, 490 -491 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, 9-10 (S.D.N.Y. Feb. 27, 2001). ("Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments."). Here, the only evidence is that defendant Guzman did not know he had the wrong type of cable subscription for a commercial establishment and there is no evidence about any acts of persons working for Santana Esg., Inc.

1   person to cruel and unjust hardship in conscious disregard of that person's rights"; malice,
2   meaning "conduct which is intended by the defendant to cause injury to the plaintiff or despicable
3   conduct which is carried on by the defendant with a willful and conscious disregard of the rights
4   or safety of others"; or fraud, meaning "an intentional misrepresentation, deceit, or concealment of
5   a material fact known to the defendant with the intention on the part of the defendant of thereby
6   depriving a person of property or legal rights or otherwise causing injury."  Cal. Civ. Code §
7   3294.  Plaintiff has introduced no evidence that could support a finding of oppression, malice or
8   fraud as to defendant Guzman or Santana Esg., Inc.

## V.  DUPLICATIVE RECOVERY

Defendants argue that plaintiff is impermissibly attempting to secure duplicative recovery by asserting a right to damages under section 553 and section 605.  However, as plaintiff made clear in its opposition and cross-motion for summary judgment, plaintiff is now asserting only a violation of section 553.  Defendants also contend that plaintiff cannot seek both statutory damages under section 553 and damages for conversion.  Courts have "subsumed" conversion damages under statutory damages where the statutory damages are sufficient to compensate the plaintiff for its loss.  *See, e.g., J & J Sports Prods. v. Corona*, 2013 U.S. Dist. LEXIS 96462, *18-19 (E.D. Cal. July 10, 2013) ("because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total award"); *Joe Hand Promotions, Inc. v. Behari*, 2013 U.S. Dist. LEXIS 37277 at *8, n.2 (E.D. Cal. Mar. 18, 2013) (explaining damages for conversion would not be awarded "because the recommended statutory damages will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative").  However, as neither side has asked the Court to decide damages on this motion, the Court cannot determine whether it is appropriate to award separate damages for conversion at this time.[8]

---

[8] Defendants also ask the Court to award them their attorney's fees and costs as prevailing parties. The Court declines to consider this request.  Defendants can renew their request after the claims are resolved with respect to the remaining defendants.

10

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment as to defendants Esquivel and Veronica Santana and limits the potential damages available to actual or statutory damages under 47 U.S.C. section 553(c)(3)(A). The Court DENIES defendants' motion as to the corporate defendant, Santana Esg., Inc. and as to defendant Guzman's personal liability. With respect to plaintiff's cross-motion for summary judgment as to defendant Guzman, the Court finds that because the statute of limitations issue is potentially dispositive – but unresolvable on this motion for summary judgment – for purposes of efficiency the Court will not resolve the question of defendant Guzman's liability at this juncture. At trial the issues can be bifurcated, and if the trier of fact rejects the statute of limitations defense, plaintiff can move for judgment as a matter of law regarding defendant Guzman's liability under 47 U.S.C. section 553.

**IT IS SO ORDERED**.

Dated: August 1, 2013



WILLIAM H. ORRICK
United States District Judge